UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JILL DUCAT, ET AL.,<br><br>      Plaintiffs,<br><br>v.<br><br>ETHICON, INC.<br><br>      Defendant. | Case Action No. 4:21-cv-10174-TSH |

## **AMENDED COMPLAINT AND JURY DEMAND**

Jill Ducat ("Ms. Ducat") and Douglas Ducat ("Mr. Ducat") hereby amend their complaint against Defendant Ethicon, Inc. ("Ethicon") and for their amended complaint state as follows:

### **PARTIES**

1. Ms. Ducat is an individual residing at 16 Heard Street, Auburn MA 01501.

2. Mr. Ducat is an individual residing at 16 Heard Street, Auburn MA 01501.

3. Ethicon is a New Jersey corporation with its principal place of business in Somerville, New Jersey. Ethicon manufactures a product called Gynecare Gynemesh PS Porlene Mesh ("Gynemesh").

### **FACTS**

4. Ms. Ducat is a 57 year old woman. In November 2002, Ms. Ducat went to St. Vincent Hospital ("St. Vincent") for a consultation for ovarian cysts and irregular menses. Following a diagnostic hysteroscopy, Ms. Ducat was diagnosed with uterine prolapse and pelvic organ prolapse.

5. In May 2003, Ms. Ducat underwent a paravaginal repair with mesh placement. The anterior repair was with Gynemesh fixed bilaterally to white line with vicryl sutures.

6. Over the next two years, Ms. Ducat experienced mesh erosion. After a mesh erosion revision, Ms. Ducat no longer experienced discomfort.

7. By June 2005, however, Ms. Ducat again experienced mesh erosion. She sought treatment at St. Vincent; upon physical examination, approximately five millimeters of Gynemesh was visible at the apex of the paravaginal area on her left side. Ms. Ducat underwent another surgery in which the anterior vaginal wall was opened, the scar, mesh and fascia were dissected and excised off completely on her left side. Residual mesh from Ms. Ducat's right side was also removed.

8. Following this surgery, Ms. Ducat did not experience additional symptoms for over a decade.

9. Beginning in or about August 2017, Ms. Ducat began to experience heavy, chronic, vaginal bleeding. She again sought treatment at St. Vincent; where doctors determined the Gynemesh was visible protruding from the left mid sulcus of Ms. Ducat's vagina.

10. Over the next year, Ms. Ducat sought help from multiple providers, including a urogynecologist. She underwent at least two vaginal mesh excisions, and multiple, painful in-office cauterizations in an effort to decrease or stop the bleeding.

11. Complicating Ms. Ducat's treatment efforts was the risk that removing the entirety of the mesh material could unnecessarily compromise other tissue, such as the bladder. Thus, efforts to remove the mesh needed to balance the need to remove the mesh involved in the vaginal mucosa erosion while preserving the integrity of Ms. Ducat's other internal organs.

12. Nonetheless, Ms. Ducat continued to experience vaginal bleeding on a daily basis. She was referred to Dr. Johnson at Framingham Union Hospital in December 2018 for surgery. Dr. Johnson noted that Ms. Ducat "has persistent vaginal wound separation that resulted in

abundant bleeding with the passage of large clots per vagina. Multiple prior physicians have tried primary repairs to reapproximate the defect only to have the wound further separate and lead to prolonged bleeding."

13. Dr. Johnson performed a cystoscopy and vaginal exploration, and placed a DermaPure decelluralized dermis allograft in an effort to resolve Ms. Ducat's persistent vaginal wound separation and continued heavy bleeding. During surgery, Dr. Johnson's examination while Ms. Ducat was under anesthesia confirmed that she had a 2 x 3 centimeter defect along the left apical border of her vagina, with one centimeter granulation tissue.

14. Unfortunately, the December 2018 surgery was unsuccessful. Ms. Ducat continued to experience heavy daily bleeding.

15. In early June 2019, Ms. Ducat underwent another surgery. Initially, Ms. Ducat's bleeding lessened significantly after surgery and seemed to resolve intermittently.

16. Less than 10 weeks after surgery, however, Ms. Ducat began experiencing increased bright red, vaginal bleeding. Again, her surgery had not been successful.

17. In May 2020, Ms. Ducat underwent yet another surgery to attempt to remove more of the Gynemesh.

18. By this point, Ms. Ducat had experienced chronic, heavy vaginal bleeding almost every day for roughly two and a half years. Due to an underlying condition, Ms. Ducat must take daily anticoagulation medication which further exacerbates her already uncomfortable and disruptive symptoms.

19. At times, Ms. Ducat's bleeding was so heavy that she could not engage in much, if any, activity. She cancelled vacations and restricted her social life because of her symptoms. Each of her procedures attempting to stop the bleeding left her in serious pain.

20. Further, given the constant, heavy vaginal bleeding, Ms. Ducat abstained from sexual activity during this time period, which seriously impacted her relationship with her husband, Mr. Ducat.

21. Initially, the May 2020 surgery was successful and Ms. Ducat was symptom-free for approximately nine months. Beginning in March 2021, however, Ms. Ducat began to experience intermittent vaginal bleeding. Because not all of the Gynemesh has been removed, she remains concerned that this bleeding could become heavier and more regular at any time.

## **COUNT I – Negligent Design**

22. Plaintiffs incorporate by reference the allegations of the preceding paragraphs as if fully stated herein.

23. Ethicon owed Ms. Ducat a duty of reasonable care in designing, manufacturing, and selling the Gynemesh.

24. Ethicon knew or had reason to know that its product was negligently designed or manufactured.

25. Ethicon breached its duty of care to Ms. Ducat either by designing, manufacturing, and/or selling Gynemesh that could, and indeed was likely to, erode and cause injury to Ms. Ducat. Ethicon further breached its duty of care to Ms. Ducat by designing, manufacturing, and/or selling Gynemesh that, on information and belief, could not be safely removed in its entirety once it eroded and caused injury to Ms. Ducat.

26. On information and belief, a safer alternative design existed at the time Ms. Ducat was implanted with the Gynemesh; possible safer alternative designs include but are not limited to mesh made from a different material such as polyvinylidene fluoride (PVDF) or polyurethane; mesh utilizing a sealed border; and/or a cadaveric sub-urethral sling.

27. These breaches of Ethicon's duty of care have caused Ms. Ducat injury.

## COUNT II – Implied Warranty of Merchantability

28. Plaintiffs incorporate by reference the allegations of the preceding paragraphs as if fully stated herein.

29. Ethicon is a merchant with respect to vaginal mesh, including the Gynemesh implanted in Ms. Ducat.

30. Ethicon manufactured and sold the Gynemesh.

31. Ms. Ducat is a person whom Ethicon could reasonably have foreseen would use the Gynemesh. She used the Gynemesh in a reasonably foreseeable way.

32. The Gynemesh was dangerously defective at the time it left the defendant's control, because it could, and was likely to, erode and cause injury to Ms. Ducat.

33. The Gynemesh was dangerously defective at the time it left the defendant's control because, on information and belief, it could not be safely removed in its entirety once it eroded and caused injury to Ms. Ducat.

34. The Gynemesh was unsuited for the ordinary use for which it was sold.

35. The Gynemesh's defective or dangerous condition caused Ms. Ducat injury.

36. On information and belief, a safer alternative design existed at the time Ms. Ducat was implanted with the Gynemesh; possible safer alternative designs include but are not limited to mesh made from a different material such as polyvinylidene fluoride (PVDF) or polyurethane; mesh utilizing a sealed border; and/or a cadaveric sub-urethral sling.

## COUNT III – Loss of Consortium

37. Plaintiffs incorporate by reference the allegations of the preceding paragraphs as if fully stated herein.

38. Ms. Ducat and Mr. Ducat are a married couple.

39. As a direct and proximate result of the Defendant's negligence, Plaintiff Douglas Ducat has been deprived of full care, comfort, society, companionship, and consortium of his wife, Jill Ducat.

40. Mr. Ducat is entitled to damages for his loss of consortium in an amount to be proven at trial.

WHEREFORE, Plaintiffs Jill Ducat and Douglas Ducat respectfully request that this Court:

A. Enter judgment in their favor on all counts of the Amended Complaint;

B. Award Jill Ducat damages in an amount to be proven at trial, together with interest and costs;

C. Award Douglas Ducat damages for loss of consortium in an amount to be proven at trial, together with interest and costs; and

D. Award Plaintiffs such other and further relief as the Court deems appropriate.

**Plaintiffs demand a trial by jury on all claims so triable.**

1233363.2

Plaintiffs Jill Ducat and Douglas Ducat,

By their attorneys,

Kevin T. Peters, BBO#550522
kevin.peters@gesmer.com
Jennifer A. Henricks, BBO#694635
jennifer.henricks@gesmer.com
GESMER UPDEGROVE LLP
40 Broad Street
Boston, MA 02109
Telephone: (617) 350-6800
Facsimile: (617) 350-6878

DATED: May 5, 2021

## CERTIFICATE OF SERVICE

I, Kevin T. Peters, hereby certify that on May 6, 2021, I filed the foregoing document electronically with the Clerk of Court using the CM/ECF system, which will serve notice on all counsel of record.

    /s/ Kevin T. Peters
Kevin T. Peters

7
1233363.2